UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STRIKE 3 HOLDINGS, LLC,

Plaintiff,

v.

JOHN DOE subscriber assigned IP address 70.95.145.139,

Defendant.

Case No.: 3:26-cv-05589-BJC-AHG

**ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

**[ECF No. 4]**

Before the Court is Plaintiff Strike 3 Holdings, LLC's ("Plaintiff") *Ex Parte* Application for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference. ECF No. 4. No defendant has been named or served, so no opposition or reply briefs have been filed. For the reasons discussed below, the Court **GRANTS** Plaintiff's *ex parte* application.

## I. BACKGROUND

On September 29, 2026, Plaintiff filed a Complaint against Defendant "John Doe," who is allegedly a subscriber of Spectrum and assigned Internet Protocol ("IP") address 70.95.145.139. ECF No. 1 at ¶ 5. Plaintiff is the owner of numerous adult motion pictures, which Plaintiff distributes through adult websites and DVDs. *Id.* at ¶¶ 2–3. Plaintiff asserts that Defendant is committing "rampant and wholesale copyright infringement" by

downloading, recording, and distributing copies of Plaintiff's copyrighted motion pictures without authorization through the use of the BitTorrent file distribution network. *Id.* at ¶¶ 4, 18–29.

In the instant motion, Plaintiff seeks leave to conduct early discovery prior to the mandated Rule 26(f) conference to learn Defendant's identity. ECF No. 4. Specifically, Plaintiff seeks an order permitting it to serve a third-party subpoena under Federal Rule of Civil Procedure 45 on Spectrum, the Internet Service Provider ("ISP") who leased the IP address belonging to Defendant John Doe, which would require Spectrum to supply the name and address of its subscriber to Plaintiff. ECF No. 4-1 at 7–8.[1] Through service of the third-party subpoena, Plaintiff seeks only "the true name and address of Defendant." *Id.* at 8. Additionally, Plaintiff represents to the Court that it will only use this information to prosecute the claims made in its Complaint. *Id.*

## II. LEGAL STANDARD

A party is generally not permitted to obtain discovery without a court order before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f). FED. R. CIV. P. 26(d)(1). However, courts make exceptions to allow limited discovery after a complaint is filed to permit the plaintiff to learn the identifying information necessary to serve the defendant. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999); *see, e.g.*, *UMG Recordings, Inc. v. Doe*, No. C-08-3999-RMW, 2008 WL 4104207, at *2 (N.D. Cal. Aug. 29, 2008) (noting, in an infringement case, that "a plaintiff cannot have a discovery planning conference with an anonymous defendant[,]" thus, limited expedited discovery would "permit the [plaintiff] to identify John Doe and serve the defendant, permitting this case to go forward.").

---

[1] Due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

Consistent with this generally recognized exception to Rule 26(f), the Ninth Circuit has held that "'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

A party who requests early or expedited discovery must make a showing of good cause. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002) (applying "the conventional standard of good cause in evaluating Plaintiff's request for expedited discovery"). Good cause is established through a balancing test "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276. To determine whether "good cause" exists to permit expedited discovery to identify John Doe defendants, district courts in the Ninth Circuit consider whether the plaintiff (1) "identif[ies] the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court"; (2) "identif[ies] all previous steps taken to locate the elusive defendant" to ensure that plaintiff has made a good faith effort to identify the defendant; and (3) "establish[es] to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss." *Columbia Ins*., 185 F.R.D. at 578–80. Additionally, the plaintiff should demonstrate the discovery will likely lead to identifying information that will permit service of process. *Id.* at 580. These factors are considered to ensure the expedited discovery procedure "will only be employed in cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service, and will prevent use of this method to harass or intimidate." *Id.*

## III. DISCUSSION

Plaintiff contends that there is good cause for this Court to allow expedited discovery. ECF No. 4-1 at 11–17. For the reasons stated below, the Court agrees.

**a. Identification of Missing Party with Sufficient Specificity**

To satisfy the first prong, Plaintiff must identify Defendant with enough specificity to enable the Court to determine that Defendant is a real person or entity who would be subject to the jurisdiction of this Court. *Columbia Ins.*, 185 F.R.D. at 578. District courts in this circuit have determined "a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." *808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash*, No. 12cv186 MMA-RBB, 2012 WL 12884688, at *4 (S.D. Cal. May 4, 2012); *see Openmind Solutions, Inc. v. Does 1-39*, No. C-11-3311-MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (concluding that plaintiff satisfied the first factor by identifying the defendants' IP addresses and by tracing the IP addresses to a point of origin within the State of California); *Pink Lotus Entm't, LLC v. Does 1-46*, No. C-11-02263, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (same). Other courts have concluded that merely identifying the IP addresses on the day of the alleged infringement satisfies this factor. *808 Holdings*, 2012 WL 12884688, at *4 (collecting cases).

Here, Plaintiff has identified the Doe Defendant with sufficient specificity. First, in support of the present motion, Plaintiff provided a Declaration by Jorge Arco, an independent contractor hired by General Media Systems LLC, the parent company of Plaintiff, as a Lead Systems Administrator and Enterprise Architect. ECF No. 4-2 at 2–16 ("Ex. A"). In those roles, Mr. Arco testifies he "was part of a team that developed the infringement detection system VXN Scan … which Strike 3 both owns and uses to identify the IP addresses used by individuals infringing Plaintiff's movies via the BitTorrent protocol." Ex. A at ¶ 41. Mr. Arco's Declaration explains the VXN Scan system in detail, which involves, in part, the development of a proprietary BitTorrent client that emulates the behavior of a standard BitTorrent client by repeatedly downloading data pieces from peers within the BitTorrent network that are distributing Plaintiff's movies. *Id.* at ¶¶ 53–56. Mr. Arco testifies that another component of the VXN Scan system is the

PCAP[2] Recorder / Capture Card, which is able to record the IP addresses connecting to the Proprietary Client and sending the infringed copies of Plaintiff's movies to the Proprietary Client through the BitTorrent network. *Id.* at ¶¶ 58–60. Not only does a PCAP contain the IP addresses used in the network transaction; it also records the port number and BitTorrent client used to accomplish each transaction, and the "Info Hash" associated with the infringing computer file, which reflects the metadata of the particular underlying .torrent file being shared without authorization. *Id.* at ¶¶ 56, 58, 63, 66. The PCAP Capture Card records PCAPs in real time and is able to record perfect copies of every network packet received by the Proprietary Client. *Id.* at ¶ 63–66. Although this Order touches only on two of the components of the VXN Scan system, Mr. Arco's 92-paragraph Declaration sets forth additional in-depth details of all six components of the system, providing the Court a thorough understanding of how the system reliably pinpoints the IP addresses used by individuals infringing Plaintiff's movies and verifies the infringement. Mr. Arco's declaration also explains the Cross Reference Tool, which verifies infringement in an additional manner, using nodes to locate peers participating in the distribution of a digital media file associated with a specific .torrent file. *Id.* at ¶¶ 87–92.

Second, Plaintiff also provided a declaration by Patrick Paige, a computer forensics expert retained by Plaintiff to analyze and retain forensic evidence captured by the VXN Scan system. ECF No. 4-2 at 18–27 ("Ex. B"). Mr. Paige explains that VXN Scan recorded numerous BitTorrent computer transactions with IP address 70.95.145.139 in the form of PCAPs, and that he reviewed the PCAP to confirm that it evidences a recorded transaction with that IP address on August 19, 2026, at 04:06:14 UTC involving the IP address uploading a piece or pieces of a file corresponding to the hash value that is unique to one of Plaintiff's movies. Ex. B at ¶¶ 13–19. Mr. Paige testified that based on his experience in

---

[2] PCAP stands for "Packet Capture." Ex. A at ¶ 62.

similar cases, Defendant's ISP, Spectrum, is the only entity that can correlate the IP address 70.95.145.139 to its subscriber to pinpoint Defendant's identity. Ex. B at ¶ 28.

Third, Plaintiff provided a declaration by Susan Stalzer, one of Plaintiff's employees who verified that each digital file that the Proprietary Client received through its transactions with IP address 70.95.145.139 is a copy of one of Plaintiff's copyrighted works, by viewing the unauthorized motion pictures corresponding with the file hashes side-by-side with Plaintiff's original movies. ECF No. 4-2 at 25–27 ("Ex. C"); *see also* ECF No. 1-2 (Exhibit A to the Complaint, listing the hash values of the 48 torrent files received by the Proprietary Client from the IP address 70.95.145.139).

Finally, Plaintiff provides a declaration by Emilie Kennedy, Plaintiff's in-house General Counsel. ECF No. 4-2 at 29–31 ("Ex. D"). Ms. Kennedy explains that after Plaintiff received infringement data from VXN Scan identifying IP address 70.95.145.139 as infringing its works, the IP address was automatically input into Maxmind's Geolocation Database on October 30, 2025, which traced the IP address location to San Diego, California, within this Court's jurisdiction. Ex. D at ¶¶ 4–5. Plaintiff has since repeated the trace through the Geolocation Database twice more, prior to filing the Complaint and prior to filing the present Motion, confirming the IP address continues to trace to this District, to San Diego, California. *Id.* at ¶¶ 6–7; *see* ECF No. 4-2 at 33. The Court is satisfied that these multiple geolocation traces over the course of multiple months indicating that the Defendant is located in this District are reliably accurate.

Based on all of the information above, the Court concludes Plaintiff has provided a sufficient showing that it seeks to sue a real person subject to the Court's jurisdiction. Likewise, if Plaintiff obtains the identifying information from the ISP for the subscriber assigned the IP address at issue, the information sought in the subpoena would likely enable Plaintiff to serve Defendant. Therefore, the Court finds Plaintiff satisfied the "sufficient specificity" threshold.

/ /

/ /

**b. Previous Attempts to Locate Defendant**

Next, Plaintiff is required to describe all steps taken to identify the Doe defendant in a good-faith effort to locate and serve them. Plaintiff states that it attempted to locate Defendant by searching for Defendant's IP address using online search engines and other web search tools. ECF No. 4-1 at 14. Plaintiff also reviewed numerous sources of authority such as legislative reports, agency websites, informational technology guides, etc. regarding whether it is possible to identify such a defendant by other means, and extensively discussed this issue with its computer investigators and cyber security consultants. *Id*. Despite these diligent efforts, Plaintiff was unable to identify any means of obtaining the identity of Defendant other than through subpoenaing the information from the ISP. *Id.*; *see also* Ex. B at ¶ 28. Thus, the Court finds Plaintiff has shown it made a good-faith effort to identify and locate Defendant before resorting to filing the instant motion.

**c. Whether Plaintiff Can Withstand a Motion to Dismiss**

Lastly, Plaintiff must establish it could survive a motion to dismiss. *See* FED. R. CIV. P. 12(b); *Columbia Ins.*, 185 F.R.D. at 579. To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To present a prima facie case of copyright infringement, Plaintiff must show: (1) ownership of a valid copyright; and (2) that Defendant violated the copyright owner's exclusive rights under the Copyright Act. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012). In addition, for direct infringement Plaintiff is required to show causation by Defendant. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).

Here, Plaintiff's Complaint clearly alleges that Plaintiff owns a valid copyright in the works at issue, which are registered with the United States Copyright Office. *See* ECF

No. 1 at ¶¶ 43, 44, 46, 49, 52.[3] And again, Ms. Stalzer attests that she reviewed the files correlating to the hashes identified in Exhibit A to the Complaint and confirmed that they are "identical, strikingly similar or substantially similar" to Strike 3's original copyrighted Works. Ex. C at ¶¶ 7–11; ECF No. 1 at ¶¶ 29–30. Plaintiff's Complaint also alleges Defendant used BitTorrent to copy and distribute the copyrighted works without authorization, and that the infringement was continuous and ongoing. ECF No. 1 at ¶¶ 4, 19–30, 33–36, 45–48. Thus, Plaintiff's Complaint has stated a claim for copyright infringement against the Doe Defendant sufficient to survive a motion to dismiss. Additionally, Plaintiff has alleged sufficient facts to show it could withstand a motion to dismiss for lack of personal jurisdiction or a motion for improper venue, because Defendant's IP address was traced to locations in this District. Accordingly, the Court concludes Plaintiff has met the third prong necessary to establish good cause for granting early discovery.

## IV. CONCLUSION

For the reasons set forth above, and for good cause shown, the Court **GRANTS** Plaintiff's *ex parte* application for leave to serve a subpoena prior to a Rule 26(f) conference. ECF No. 4. However, the Court is cognizant of the potential embarrassment of being identified in this type of case and "shares the growing concern about unscrupulous tactics used by certain plaintiffs, especially in the adult film industry, to shake down the owners of IP addresses." *Malibu Media, LLC v. Does 1-5*, No. 12-Civ-2950-JPO, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012). Anticipating and sharing these concerns, Plaintiff invites the Court to issue a protective order establishing procedural safeguards if the Court

---

[3] Exhibit A to the Complaint, which shows the hash values of the purportedly infringing movies downloaded from the IP address 70.95.145.139, also contains the United States Copyright Office registration information of the works that correspond with those hash files. ECF No. 1-2.

finds such procedures appropriate. ECF No. 4-1 at 18. Accordingly, the Court **ORDERS** as follows:

1. Plaintiff shall attach a copy of this Order to any subpoena.
2. Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to provide Plaintiff with **only** the true name and address of the Defendant to whom the ISP assigned an IP address as set forth on Exhibit A to the Complaint. The ISP is **not** to release the Defendant's telephone number or email address.
3. Within fourteen (14) calendar days after service of the subpoena, the ISP shall notify the subscriber that his or her identity has been subpoenaed by Plaintiff. The ISP must also provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.
4. The subscriber whose identity has been subpoenaed shall have thirty (30) calendar days from the date of such notice to challenge the disclosure of his or her name and contact information by filing an appropriate pleading with this Court contesting the subpoena. A subscriber who moves to quash or modify the subpoena may proceed anonymously as "John Doe," and shall remain anonymous until the Court orders that the identifying information may be released.
5. If the ISP wishes to move to quash the subpoena, it shall do so before the return date of the subpoena. The return date of the subpoena must allow for at least forty-five (45) days from service to production. If a motion to quash or other challenge is brought, the ISP shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge.
6. Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on the ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint. If Defendant wishes to proceed

anonymously, Plaintiff may not release any identifying information without a court order allowing the release of the information.

**IT IS SO ORDERED.**

Dated: October 15, 2026

Honorable Allison H. Goddard
United States Magistrate Judge